[Civil No. 2966.   Filed January 26, 1931.]

[295 Pac. 302.]

DURKEE–THOMAS CORPORATION, a Corporation, Appellant, v. C. W. DOHERTY, Appellee.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Messrs. Stockton & Perry, Mr. E. G. Frazier, Mr. Stanley A. Jerman and Mr. Thomas P. Riordan, for Appellee.

LOCKWOOD, J. — C. W. Doherty, hereinafter called plaintiff, brought suit against Durkee-Thomas Corporation, a corporation, hereinafter called defend-

458

ant, for an alleged breach of a contract for the employment of plaintiff by defendant for the term of one year. The case was tried before a jury which returned a verdict in favor of plaintiff in the sum of $1,900, and, from the judgment and the order overruling the motion for a new trial, defendant has appealed. The facts necessary for the determination of this appeal are not in serious conflict and may be stated as follows:

Defendant is engaged in the business of selling automobile batteries. Its general headquarters are at San Francisco, California, but on December 1st, 1928, it maintained two branch offices, one in Southern California, and the other in Arizona. George A. Davis was the manager of the Southern California branch, and J. C. Edwards was the manager of the Arizona branch. The latter branch had been established but a short time, and plaintiff was working under Edwards as a salesman. Each branch manager had the right to employ and discharge help in his own district, and to fix their compensation, subject to review from the home office in San Francisco, but neither had any authority over the actions of the other.

On the date stated Edwards and plaintiff were compensated by commissions on the amount of business done, but had a drawing account for expenses, to be charged against commissions, in the sum of $200 per month. The commissions earned by Edwards and plaintiff did not equal their drawing account, and plaintiff informed Edwards that he could not continue to work for the amount he was then receiving. Edwards then wrote to Davis in Los Angeles, and in the letter in question stated:

"Just a line to let you know that we are expecting you around the first of the year, and also to give you my opinion as to the situation here.

"I have a lot of confidence in the deal, but it is no set up, and we have plenty of competition, most of which has sprung up within the last sixty days.

"What I would suggest, in order to make this deal workable, is that Doherty and myself be allowed a drawing account of $125.00 on the 1st and 15th of each month. This drawing account to be figured as a guarantee, regardless of what the commissions run. . . .

"So see what you can do Geo. Doherty is a valuable man on the territory and I don't want to lose him right now, as he is holding a lot of good accounts, even in the face of keen competition."

Immediately thereafter Davis replied:

"Regarding your deal Jack, I would suggest that you and Doherty go right ahead and draw your $125.00 on the 1st and 15th of every month, and I will take this up with San Francisco, but in the meantime go right ahead. I appreciate what you fellows are up against in starting this deal and rest assured I will write to San Francisco explaining this and telling them that your deal has changed and that you have started drawing $125.00 on the first of January and $125.00 on the 15th of January and so on the balance of the year."

Both of these letters were shown to plaintiff, and Edwards said, in substance, when he exhibited the last one, "Is that satisfactory?" To which plaintiff replied that it was. The drawing accounts of Edwards and plaintiff had always been paid by checks drawn by the former on the 1st and 15th of every month on the Valley Bank of Phoenix, and each month a report was made by him to the San Francisco office showing, among other things, these checks and the purpose for which they were drawn. Beginning with January 1st, 1929, the drawing account of Edwards and plaintiff was each increased by Edwards to the amount suggested by the letters up to and including April of that year, when plaintiff was discharged for the reason that the business of the branch was too small to stand the expense of a full time salesman. Thereafter he brought this suit.

It is the contention of plaintiff that the two letters quoted above constituted a contract of employment for one year, at the rate of $250 per month. It was urged by defendant, on the other hand, that the letters in question were merely a conditional offer subject to the approval of the San Francisco home office, and that, in order to bind defendant thereby, it must appear that the San Francisco office had actually approved 'the proposed contract or was estopped by reason of circumstances from denying such approval. In support of its theory, it attempted to offer evidence as to the knowledge of the San Francisco office of the entire transaction, some of which evidence was admitted and some rejected by the trial court, and at the close of the case asked for the following instruction:

"Gentlemen of the jury, you are instructed that unless you find upon all the facts in evidence in this case that the defendant herein, a corporation, had full knowledge of the contents of the letters introduced in evidence in this case, then there was no binding contract between this plaintiff and the defendant.

"You are further instructed that ratification of a contract can be made only when the person charged with 'the said contract had full knowledge of the facts pertaining thereto, and therefore, if you find upon all the evidence that the Durkee-Thomas Corporation, through its duly authorized officers, had no knowledge of the terms of any agreement between 'the plaintiff and its branch manager, then there was no ratification and the plaintiff is not entitled to recover against this defendant."

The court denied the instruction, but of its own motion gave the following one:

"Gentlemen, it is the duty of the court to construe written instruments as a matter of law; and you are instructed in this case that if you believe from the evidence in this case that the defendant's agent, Mr. Edwards, upon receiving the letter marked in evidence as plaintiff's Exhibit B exhibited the same to the plaintiff, Doherty, such letter containing a state-

ment that the drawing account of plaintiff should be $125.00 on the first of January and $125.00 on the 15th of January and so on the balance of the year, that at the time he presented such letter to the plaintiff, Doherty, he made no statement disclaiming that such offer was for a period of a year, then I charge you that the offer contained in the letter was for a period of one year from January the 1st, and if you believe from the evidence that the plaintiff, acting thereupon, began to discharge his duty as such salesman and so continued and has ever since been ready to perform the service required of him as such salesman, then it would be your duty to return a verdict for the plaintiff and against the defendant in the sum of $1900, for the reason that the defendant would be entitled under the evidence to a discount in such sum as the plaintiff may have been able to earn since his discharge from the service of the defendant company in a similar line of work. You are instructed, however, gentlemen, that if you believe from the evidence in this case that at the time that Mr. Edwards handed the letter to Mr. Doherty that he disclaimed by any words or any language the purport of said letter to the extent that the offer was for a period of one year, then it would be your duty to return a verdict in this case in favor of the defendant."

There are some five assignments of error, but we think we need consider only one, and that is that the court erred in giving the instruction quoted. It is obvious it was the theory of the trial court that the two letters from which we have quoted, when exhibited to plaintiff, constituted a definite binding contract for the term of one year, unless Edwards explicitly disclaimed at the time it was his intention to employ plaintiff for that period. We are of the opinion that the two letters, when read together, show plainly that Edwards did not offer an unconditional employment for a term of one year, so that the acceptance of the offer by plaintiff would bind defendant, but, on the contrary, that such offer was made expressly subject to the approval of the San Francisco office.

It is not the ratification of a contract actually made by an unauthorized agent that is in question, but a conditional offer accepted by the plaintiff, subject to the fulfillment of the condition. Such being the case, it was necessary, in order to bind defendant for any term beyond that during which plaintiff actually performed services, that it appear that defendant, with a knowledge of the offer, approved it specifically, or by acquiescence therein. Obviously the burden is upon the party relying on the contract to show that the condition was fulfilled, or that defendant is estopped from denying such fulfillment. 13 C. J. 756.

The instruction of the trial court quoted was prejudicial error, and for this reason it is necessary that the judgment be reversed, and the case remanded for a new trial in accordance with this opinion. It is so ordered.

McALISTER, C. J., and ROSS, J., concur.